[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On December 14, 2001, the plaintiff, Dana M. Reig, in addition to bringing a two count complaint requesting, inter alia, a dissolution of the defendant, Amore II, a limited liability company, an accounting and compensatory damages, filed an application seeking the appointment of a person to wind up the affairs and to dissolve said LLC.
In his application, the plaintiff alleges that he and the defendant, Michael Ostrofsky, each own a one-half interest in the defendant LLC which was formed for the purpose of selling food at retail for consumption by the public and that Ostrofsky, alone, was presently operating the business and not paying its bills. Further, plaintiff claims that he and Ostrofsky are at an impasse, finding it impossible to do business together and can neither agree to continue the business nor to sell it.
On January 14 and February 19, 2002, Reig, Ostrofsky and their witnesses were heard on the issued raised by the application and from the credible evidence presented, the court finds the following: CT Page 4358
On or about August 9, 1999, Reig and Ostrofsky as co-equal owners organized the defendant, Amore II, a LLC as a limited liability company with its principal place of business at 98 Bridge Street in Naugatuck, Connecticut. The intention of the principals was to organize the LLC to operate a restaurant pizza business that would generate income for them. The parties jointly operated the business successfully from its inception through the end of the year 2000. During that period of time the business produced sufficient funds to provide Reig and Ostrofsky with salaries, to pay the sales taxes, to pay the operating expenses and to pay most, if not all, of the suppliers' bills as they came due.
During the middle of the month of March 2001, Reig stopped working at the business believing he and Ostrofsky could no longer work together as business partners. Thereafter under Ostrofsky's sole management, a number of debts generated by the business either became delinquent and/or increased substantially in amount due and owing.
Presently, approximately $9,000.00 is owed to one of the business' principal vendors, Lisa Foods; approximately $7,000.00 is owed another vendor, Napoli Foods; and the Connecticut Department of Revenue Services is owed in excess of $9,000.00 for the first two quarters of the year 2001 and Ostrof sky has failed to file the required sales tax returns for the last two quarters of that year.
As partial justification for the present situation, Ostrofsky claims that much of the indebtedness is attributable to Reig's unauthorized personal use of funds that were earmarked for the payment of business debts and the fact that Reig's salary draw for the year 2000 was several thousand dollars greater than his. Additionally, Ostrofsky contends that towards the resolution of the financial problems, he has worked out a payment plan with the state tax department that will allow the business to satisfy the sales tax arrearage over a period of time. In regard to the delinquent debts owed to the various vendors, he claims, although on a C.O.D. basis, that he is still on good terms with Lisa Foods and Napoli Foods. As a result, Ostrofsky believes that the appointment of a person to wind up the affairs and to dissolve the LLC is not warranted or necessary.
Reig argues that the total amount of Ostrofsky's draw was reported as less than his because Ostrofsky used business funds to pay certain personal debts including a $1,200.00 cell phone bill, which caused the amount of his draw, on occasion, to be reduced.
Notwithstanding the foregoing argument, it is obvious that the business was organized to be managed and operated with the participation of both CT Page 4359 Ostrofsky and Reig. Decisions of any consequence concerning any aspect of the business, including but not limited to, formulating business plans, determining business priorities, setting salaries/draws, entering into or terminating contracts with vendors, hiring or terminating personnel and paying bills, all require the concurrence of both parties, because neither has majority control. Like it or not, Reig and Ostrofsky, since they each own one-half of the LLC, are partners in its operation, although, it is obvious from their actions and recriminations that they cannot act, with the requisite trust and cooperation required of equal business partners. Consequently, Reig properly seeks the granting of his application.
Pursuant to Connecticut General Statues Section 34-208, the business and affairs of a limited liability company may be wound up . . . "(2) on application of any member . . ., by the Superior Court for the judicial district where the principal office of the limited liability company is located, if one or more of the members or managers of the limited liability company have engaged in wrongful conduct, or upon the other cause shown."
As Reig indicates in his memorandum of law dated January 28, 2002, limited liability companies are a relatively new legal entity in Connecticut. As a consequence, there is a lack of case law interpreting the type of "wrongful conduct" that would meet the standard for judicial winding up of an L.L.C. or what "other causes" would be sufficient under the statute. Unfortunately the statutes' legislative history is of no assistance in this regard. However, it stands to reason that the facts found by the court, as set earlier in this memo, indicating the inability of the parties to work in concert constitutes, in the words of the statute, "other cause shown".
While it would make good business sense for the parties to salvage as much as possible of the L.L.C. through a buy-sell agreement between themselves or via a sale to a third party, their inability to agree requires action pursuant to statute, by the court.
Wherefore, the court grants the plaintiff's application for the appointment of an individual to wind up the affairs and to dissolve the defendant, Amore II, a L.L.C. In furtherance of the court's decision, Reig, Ostrofsky and their counsel are ordered to appear at the call of the special proceedings calendar at Superior Court for the Judicial District of Waterbury, in Courtroom #5, 300 Grand St. at 11:00 a.m. on Monday, April 22, 2002. The parties are ordered to appear for the purpose of each submitting the names of three individuals to be considered by the court for possible appointment to wind up the affairs of the defendant, Amore II, a L.L.C. CT Page 4360
So ordered.
THOMAS G. WEST, J.